IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCOTLAND WILLIAMS,

    *Plaintiff*,

    v.

                                    Civil Action No. ELH-19-896

DAYENA CORCORAN, *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

Scotland Williams, the self-represented plaintiff, is a Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He brings this civil action ("*Williams II*") pursuant to 42 U.S.C. § 1983 against Commissioner of Correction Dayena Corcoran, Warden Frank Bishop, Jr., and Librarian Rebecca Hammons (ECF 1), complaining that he was wrongfully "deprived of the funds in his account without due process." *Id.* at 5. Williams appended several exhibits to his suit.

In particular, plaintiff asserts that he learned on April 18, 2016, that he was "charged $5.00 for materials from the library," and the fee dates to February 8, 2011. *Id.* at 4. According to plaintiff, Hammons violated his due process rights by "refusing to give him notice of being charged for the library materials and depriving him of the opportunity to challenge the charge." *Id.* at 6. And, he complains that Corcoran and Bishop violated his rights by failing to remedy the occurrence. *Id.* at 5. Williams seeks compensatory damages of $5.00 "against each defendant, jointly and severally," punitive damages of $500 "against each defendant, jointly and severally," and costs. *Id.* at 6.

Bishop and Corcoran have moved to dismiss or, in the alternative, for summary judgment. ECF 15. Their motion is supported by a memorandum of law (ECF 15-1) (collectively, the

"Motion"), and several exhibits. ECF 15-2 to ECF 15-4. The exhibits include a copy of the Memorandum Opinion issued by this Court in a similar case initiated by plaintiff, concerning a charge to his account for photocopy fees. ECF 15-2; *see also Williams v. Commissioner*, ELH-17-2003 ("*Williams I*"), ECF 17. Hammons has also moved to dismiss or, in the alternative, for summary judgment. ECF 25. To avoid duplication, she merely joins the Motion filed by the codefendants. *Id.* at 2. Because Hammons has joined the Motion, I shall address the two motions collectively.[1]

Williams was notified of his right to respond to the motions and the consequences of failing to do so. ECF 16; ECF 26. Williams filed two requests for extensions of time in which to respond. ECF 18; ECF 23. The Court granted both requests. ECF 19; ECF 24. The Court also granted Williams's request to submit a consolidated response to the motions, which was due by December 31, 2019, *i.e.*, more than four months after the Motion was filed. *See* ECF 29.

On January 6, 2020, Williams filed another motion for continuance, in which he also requested the opportunity to conduct discovery. ECF 30 (the "Motion for Continuance"). He attached one exhibit. ECF 30-1. But, Williams has not responded to the merits of the Motion.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion for Continuance and I shall grant the Motion.

---

[1] All defendants are represented by counsel from the Maryland Attorney General's Office. However, the attorney who represents Corcoran and Bishop is not the same individual who represents Hammons.

# I. Factual Background[2]

NBCI "provides library services to all inmates." ECF 1 at 3. According to Williams, materials available from the library include "legal and reference materials," as well as fiction and non-fiction books, "large print books," foreign language books, and magazines. *Id.* at 3-4. "Library materials generally must be returned after two weeks." *Id.* at 4. Inmates are "financially responsible for any library materials that are damaged or not returned." *Id.* According to Williams, inmates in segregation can submit library request forms for books, including legal materials. *Id.* These materials are photocopied and then delivered to the inmate. *Id.*

Williams claims that on April 18, 2016, he learned that he was charged $5.00 in connection with library materials, and the charge dates to February 8, 2011. ECF 1 at 4. An account statement attached to the Motion reflects a $5.00 "Trans. Amt." for "Paper Materials," incurred on February 8, 2011. ECF 15-3 at 4. Plaintiff claims he was unaware of the charge, had not been notified of the charge, and was not given a hearing. ECF 1 at 4. Nor does he know the basis for the charge. *Id.* Moreover, he disputes that he owes the money. *Id.*

On April 19, 2016, Williams filed a request for administrative remedy procedure ("ARP") concerning the $5.00 library charge. ECF 1 at 5. He attached a copy of his ARP, "NBCI 0894-16," as an exhibit to the suit in *Williams II*. ECF 1-2 at 1. Plaintiff signed the ARP on April 19, 2016, and it was received on April 22, 2016. *Id.* Williams has also submitted evidence of the $5.00 charge from February 8, 2011. ECF 1-2 at 2. And, he attached the Borrower's Responsibility Agreement, dated November 5, 2008, which states, in part: "If a [library] book is

---

[2] Because I construe defendants' Motion as a motion to dismiss, as discussed, *infra*, I shall assume the truth of all factual allegations in the Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

not returned or is damaged, I will sign a voucher for the amount to be taken from my account or an adjustment will be written." *Id.* at 3. In the ARP, plaintiff claimed that he returned all his library materials, and that the $5.00 charge was erroneous. ECF 1-2 at 1.

Williams contends that the ARP was dismissed as untimely, because the charge occurred in 2011. ECF 1 at 5. The ARP request is stamped: "Dismissed for procedural reasons: Final per DCD 185-002 VI.L.3. Your request was not received within the established timeframe." ECF 1-2 at 1. Scotland signed a "Receipt of Warden's Response" on April 25, 2016. ECF 15-3 at 5.

Plaintiff noted an appeal as to the ARP. ECF 1-2 at 4. On the appeal form, Williams stated: "The request was received within established timeframe, therefore dismissal for procedural reasons is without merit." *Id.* There is no indication on the form that it was received or processed. *Id.* But, Williams contends that his appeal was dismissed. ECF 1 at 5.

Williams attached to his suit a letter he received from the Inmate Grievance Office ("IGO"), dated August 5, 2016. ECF 1-2 at 5. It was written in response to plaintiff's appeal of June 29, 2016, as to ARP NBCI-0894-16. *Id.* On behalf of the IGO, Audrey Brown told Williams that he had failed to include a copy of his "ARP complaint." *Id.* Further, she said, *id.* at 5-6:

> COMAR 12.07.01.04(B)(9)(a) requires that you demonstrate exhaustion of the ARP process by submitting, with your grievance at the outset of the grievance process, all related ARP paperwork. COMAR 12.07.01.06(B)(4) provides that a grievance shall be dismissed on preliminary review as wholly lacking in merit if the grievant did not properly exhaust remedies available under the ARP process and if the exhaustion requirement has not been waived for good cause shown. . .
>
> In order for this Office to determine whether you have properly exhausted an available ARP remedy, whether you have timely filed this grievance, and whether you have stated a claim upon which administrative relief can and should be granted, we require that you provide copies of all related ARP paperwork pertaining to this grievance, including your ARP complaint to the Warden, any receipt from the Warden, any response of the Warden, any appeal to the Commissioner, any receipt from the Commissioner, and any response of the Commissioner, all as required by COMAR 12.07.01.04(B)(9).

Brown told Williams that he had 30 days from the date of her letter to provide all of the "missing ARP paperwork" and, if he failed to do so, his complaint would be dismissed. *Id.* at 6. However, there is no indication of a response from plaintiff.

Defendants assert that the grievance was dismissed on September 6, 2016, for failure of plaintiff to comply with the IGO's directive. ECF 15-1 at 6. They cite "Exhibit 5 at 1-2." *Id.* But, they did not include an Exhibit 5.

Maryland Code (2017 Repl. Vol.), § 10-207(b)(2)(ii) of the Correctional Services Article ("Corr. Serv.") states: "The order of dismissal constitutes the final decision of the Secretary for purposes of judicial review." The final agency determination is subject to judicial review in a Maryland circuit court. *See* Corr. Servs. § 10-210. However, there is no indication in the submission that Williams sought review in a Maryland court. In any event, defendants do not contend that Williams failed to exhaust his administrative remedies. *See Pozo v. McCaughty*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Williams's earlier case (*Williams I*), challenging an assessment for photocopy fees, is also relevant. And, as discussed, *infra*, I may take judicial notice of it.

In *Williams I*, plaintiff challenged a charge to his account that was assessed in April 2016 for photocopy fees. The fees were incurred on multiple occasions. In support of defendants' summary judgment motion, defendants submitted the Maryland Department of Public Safety and Correctional Services' Trust Account Activity Statement for Williams, for the period November 1, 2015 to April 30, 2016. ECF 11-2 at 1. It showed that on April 1, 2016, $50.00 was deposited into Williams's inmate account at NBCI. *See Williams I*, ECF 11-2 at 1; *see also Williams II*, ECF 15-2 at 2; ECF 15-3 at 9. After the $50 was deposited to Williams's account, his account was

debited $30.27 for a debt previously incurred for photocopy fees. *Williams II*, ECF 15-2 at 2; *Williams I*, ECF 11-2. It was that transaction that was at issue in *Williams I*. In addition, plaintiff was charged $10.00 for a court filing fee. *Williams I*, ECF 11-1 at 3. Thus, Williams's account was debited a total of $40.27, of which $30.27 was for photocopy fees. *Williams I*, ECF 11-2 at 2. But, the records showed that he actually owed a total of $43.35 for photocopy and library fees. ECF 11-3.[3]

In the Memorandum Opinion issued by this Court in *Williams I*, *id.* at ECF 17, awarding summary judgment to defendants, I referenced the explanation provided by Cheryl Lindner, the Fiscal Account Clerk Manager at NBCI, provided on September 22, 2016, to Audrey Brown. *Williams I*, ECF 11-3. Lindner said that Williams owed $43.35 for photocopy fees. Notably, she listed eight charges that accounted for that sum, incurred by Williams between April 2009 and April 2014. Of relevance here, she specifically included in that sum a charge from February 8, 2011, for $5.00 for "Pater Materials." *Id.*[4] That matches precisely the charge at issue in this case.

Further, Lindner explained, *id.*:

The charges resulted in a negative "reserve" balance, which is considered debt, due to insufficient funds in his Active balance to pay the charges. His account was indigent at the time the charges occurred, however, vouchers are submitted by Medical for the Medical copies and Case Management and housing unit staff for the copies and other charges. The accounts are not checked for indigency by Inmate Accounts prior to posting the charges.

## II.    Legal Standard

In sum, Williams claims that Hammons violated his due process rights by "refusing to give him notice of being charged for the library materials and depriving him of the opportunity to

---

[3] The last transaction on ECF 11-2 is dated April 14, 2016. *See id.* at 1, 2, 3, 4.

[4] The submission of Ms. Lindner was filed in *Williams I* on November 29, 2017. Therefore, Williams had a copy of the exhibit at least by that date.

challenge the charge." ECF 1 at 6. And, he claims that Bishop and Corcoran learned of the charge through the administrative remedy process but "refused to remedy the due process violation." *Id.* at 5.

Defendants' Motion is styled as a "Motion to Dismiss Or, In the Alternative, For Summary Judgment." A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*.

Summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *Kolon Indus., Inc.*, 637 F.3d at 448-49. As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014)); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to the [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit…is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's

objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Williams has not filed an Affidavit under Rule 56(d). However, he has filed a Motion for Continuance (ECF 30), claiming that he needs discovery "to adequately respond to defendants' summary judgment motion." *Id.* at 2. According to Williams, "most of the key evidence lies in the custody and control of defendants and [is] not available to the plaintiff." *Id.* He explains that he is "indigent and currently housed in segregation for which he is only allowed out of his cell for showers," and as a result "having access to any information to show a widespread abuse is an insuperable task" without court-ordered discovery. *Id.* Further, he claims that he has asked NBCI for information about "the number of inmates charged for library materials and the procedures used to make these charges" but received no response. *Id.* at 3. And, he claims to have "filed a Maryland Public Information Act request with the secretary of the department of public safety and correctional services, requesting information regarding punitive actions on inmates from 2011 through 2018 for damaged or not returned prison library books," but received no response. *Id.*

In addition, plaintiff submitted a copy of *Putney v. Likin*, 656 F. App'x 632 (4th Cir. 2016), a case involving a prisoner who had been deprived of a mattress for four months. There, the Fourth Circuit concluded that the district court erred in construing a motion as one for summary judgment and granting it without addressing the prisoner's discovery request. *Id.*

Because Williams has explicitly requested further discovery, I shall construe the Motion as one to dismiss.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th

Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is

improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *Kolon Indus., Inc.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary

to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting Forst, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007). But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

A court may properly consider documents expressly incorporated by reference into the complaint. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

"When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."

*Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). So, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167.

A court may also consider documents submitted by the movant, even if they were not attached to or expressly incorporated in a complaint. However, to do so, the document must be "integral to the complaint" and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Of import here, a court may also "take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Of relevance here, it is not uncommon for a

court to take "judicial notice of ascertainable facts [in] the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

Defendants have submitted with their Motion a copy of the same ARP Williams submitted with his Complaint. ECF 15-3 at 2-4. They have also submitted a receipt for the warden's response, which Williams signed. *Id.* at 5. Because Williams references the ARP in his Complaint, these documents are integral and I may consider them. And, because the document showing the charge in question is central to Williams's claims, I may also consider it. ECF 15-3 at 4.

Moreover, as discussed above, the Court may take judicial notice of its previous Memorandum Opinion in *Williams I*, in which it granted summary judgment to defendants in connection with similar disputed charges, based on uncontroverted evidence. *See Williams I*, Memorandum Opinion and Order of July 3, 2018, at ECF 17; ECF 18. In particular, the Court relied on exhibits that showed the deposit of $50 to plaintiff's account on April 1, 2016, and the subsequent debit to his account for photocopy fees, because his account then had sufficient funds to cover outstanding debts.[6] Notably, the debit of $30.27 did not cover all of Mr. Williams's outstanding balance.

## III. Discussion

### A.

Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

[6] Defendants have not asserted that this suit is barred by res judicata. I need not reach that issue, in light of my disposition. But, I note that the claim here overlaps with the claim at issue in *Williams I*. Moreover, the $5.00 library charge was identified in *Williams I* as due and owing, per ECF 11-3. Certainly, both of plaintiff's claims could have been litigated together.

Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181

("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Moreover, the doctrine of respondeat superior does not apply to actions under 42 U.S.C. § 1983. *See Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Under § 1983, to establish supervisory liability, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

**B.**

Williams claims that the defendants deprived him of due process by improperly deducting $5.00 from his account in 2016 for library materials that he accessed in 2011. ECF 1 at 4. He contends that Hammons violated his due process rights by "refusing to give him notice of being charged for the library materials and depriving him of the opportunity to challenge the charge."

*Id.* at 6. And, he complains that Corcoran and Bishop "refused to remedy the due process violations after learning of it through the administrative remedy process." *Id.* at 5.

In their Motion, Corcoran and Bishop argue: (1) "Violation of State law procedures does not present a federal due process issue" (ECF 15-1 at 8); (2) Williams has failed to allege facts concerning any misconduct by Corcoran and Bishop (*id.* at 9); (3) to the extent that defendants were sued in their official capacity, they are immune from suit under the Eleventh Amendment (*id.* at 9-10); (4) there are no facts in the record sufficient to show supervisory liability on the part of Corcoran and Bishop (*id.* at 10-12); and (5) the defendants are entitled to qualified immunity (*id.* at 12-14). Hammons states, ECF 25, ¶ 4:

> The same legal arguments and factual aversions set forth in Defendants, Warden Frank Bishop Jr., and Commissioner Dayena Corcoran's Motion to Dismiss or in the Alternative for Summary Judgment [ECF 15] command dismissal of the Complaint against Hammons.

Williams's claim of a constitutional violation of his due process rights is unavailing. The fact that $5.00 was deducted from Williams's account for library materials amounts only to a deprivation of Williams's property interest in his prison account. Thus, his claim at best is akin to one of lost or stolen property. In such cases, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Maryland law provides an adequate post-deprivation remedy. Williams filed his ARP on April 19, 2016. ECF 1-2 at 1. He appears to have appealed the denial of the ARP on June 29, 2016. ECF 1-2 at 5. In response, he was informed that he had 30 days to submit the "missing ARP paperwork" or his grievance would be dismissed. ECF 1-2 at 6. But, he failed to do so. And, upon dismissal of his ARP, he had the right to judicial review in a Maryland court. *See* Corr.

Servs. § 10-210(b)(1). Thus, Williams had an adequate post-deprivation remedy. *Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[7]

To the extent that Williams claims that defendants violated their own policy and improperly withdrew funds to recoup the "debt" he incurred on February 8, 2011, such a claim does not amount to a constitutional violation. The adoption of procedural guidelines does not give rise to a liberty interest. Therefore, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), aff'd, 644 F. App'x 243 (4th Cir. 2016). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6.

The State is entitled to recoup its costs for lost, overdue, or damaged library materials. The assessment of such costs seems akin to the recovery of filing fees from a prisoner under certain circumstances, in accordance with the Prison Litigation Reform Act. See 28 U.S.C. §§ 1915(a), (b); *see Bruce v. Samuels*, ___ U.S. ___, 136 S. Ct. 627, 632 (2016) (under the PLRA, allowing indigent inmates to bring legal action immediately and correctional institutions to later assess "monthly payments of 20 percent of the preceding month's income"). It is also akin to a penal institution's right to recover for the cost of postage. *See Pearson v. Simms*, 345 F. Supp. 2d 515, 517 (D. Md. 2003) (noting that correctional institutions can issue vouchers to indigent inmates to

---

[7] Although *Juncker* concerned personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in State courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt* in dismissing the plaintiff's due process claim.

allow them to send mail subject to repayment at a later date), *aff'd*, 88 F. App'x 639 (4th Cir. 2004); *accord White v. White*, 886 F.2d 721, 727 (4th Cir. 1989) (discussing an instance where an inmate was willing to "sign a voucher against his future earnings to pay for the stamp now").

In any event, Williams has failed to set forth sufficient facts that personally implicate Corcoran or Bishop in any wrongdoing. First, he has not shown that his constitutional rights were violated or that a supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed an unreasonable risk of constitutional injury. Moreover, Williams's assertions, even if true, would not establish supervisory action or inaction, so as to give rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse").

Corcoran and Bishop hold supervisory positions at DPSCS. Plaintiff states that Corcoran is "in sole and active charge of the Division of Correction (D.O.C.) and of its agencies and institutions." ECF 1 at 2. With respect to Bishop, plaintiff merely states that "he is legally responsible for the welfare of all inmates and the supervision of staff within NBCI". *Id.* at 3. As noted, however, there is no respondeat superior liability under § 1983. And, the supervisory functions of Corcoran and Bishop do not equate to personal wrongdoing, which is a prerequisite to liability under § 1983. Nor has plaintiff set forth facts showing that Hammons had any personal involvement in DPSCS's effort to recover its costs.

To be sure, Williams complains because the debt was collected several years after it accrued; he allegedly was not informed of the charge until years later; and he disputes liability.

But, Williams had the opportunity to contest the claim. He has not stated a viable constitutional claim.[8]

## IV.    Conclusion

For the reasons set forth above, defendants are entitled to judgment as a matter of law. I will therefore grant the Motion. And, I shall deny plaintiff's request for a continuance.

An Order follows.

Date: March 12, 2020                                        _____/s/_____

Ellen L. Hollander
United States District Judge

---

[8] Because I find that Williams has alleged no constitutional violation, I need not address defendants' other arguments.